GREEN BENNETT and CHARLES M. BENNETT, Appellants, *v.* ELBERT W. COOK and others, Respondents.

The plaintiffs were first and second and the defendant third indorsers upon two drafts and a note of one N., who held a contract for the purchase of lands. N., being insolvent, transferred the contract to the defendant, absolutely in form, but in fact as security for the latter's liabilities on N.'s account, including the drafts and note. On the same day he made a general assignment to the plaintiffs, in trust for creditors, preferring the drafts and note. Shortly after this, the plaintiffs gave to the holder of the

drafts and note, for the aggregate amount thereof, a note made by one of them, indorsed by the other as first indorser, and by the defendant as second indorser. The holder, a bank, thereupon gave up to them the drafts and note, with the bank mark of cancellation upon them. One of the plaintiffs, under the suggestion of the defendant, then brought action against the acceptor of the drafts, but failed from defect of parties. The new note was renewed, from time to time, and finally paid by the defendant. About the same time, the defendant paid up the amount due upon N.'s land contract, and took a deed of the premises. Immediately after paying the note, he brought suit against the plaintiffs to recover back the moneys so paid, and after litigation (in which the plaintiffs defended on the ground that the defendant had received N.'s contract and deed as security for the original drafts and note, and that the value of such security exceeded the amount paid by him, which defence was denied, in all particulars, by the defendant), recovered judgment against them for the whole amount, which judgment they paid. The plaintiffs then brought this action, asking either to be permitted to redeem the contract as assignees of N., or to be subrogated as sureties to the defendant's rights in the contract, to the extent of their payments,—*Held*, this action having been commenced more than ten years after the assignment, and after the giving of the new note by the plaintiffs, with defendant as indorser, but within ten years after the payment by the plaintiffs of the defendant's judgment against them, that the right to redeem was barred, but the right to subrogation not having accrued until the payment of the judgment, was not barred by the statute of limitations.—*Held*, further, that the defendant's judgment was no bar to this action to enforce such right of subrogation.

(Argued February 15th; decided April 4th, 1871.)

APPEAL from the judgment of the General Term of the Supreme Court, in the sixth judicial district, reversing that part of the judgment of the referee appealed from by the defendants, and affirming that part appealed from by the plaintiffs.

The action was originally commenced in the name of *Green Bennett* v. *Charles Cook*. During its trial Charles M. Bennett was added as co-plaintiff, and Charles Cook having died, the present defendants, who are both his heirs and administrators, were substituted as defendants.

The action was brought in a double aspect, either to be permitted, as assignee of one Nash, to redeem from the defendants the premises described in the complaint, or to be sub-

rogated to Cook's interest in the premises to the extent of their claim or lien thereon, for moneys paid by them as sureties of Alvah Nash.

The facts sufficiently appear in the referee's findings, which are as follows :

1. That on the 10th day of August, 1845, Samuel Watkins agreed to sell one Alvah Nash, 100 acres of land for the consideration price of $1,500, the land being situate in the town of Dix, in the then county of Chemung, now Schuyler.

That to carry such agreement into effect, a written contract of such sale and purchase was executed by Watkins and Nash, dated on the day and year aforesaid, which contract is referred to in the complaint.

2. That in drawing this contract the south line thereof was not made parallel to the north line, as agreed between Watkins and Nash, but made to run in such a direction as to include a much larger quantity of land than Watkins had agreed to sell or Nash to purchase.

That Nash knew at the time of the execution of the contract, that he was getting described in the contract this excess of quantity, and had the contract prepared with reference thereto.

That Watkins, at the time of the execution of the contract by him, had no knowledge that the contract was different from the agreement, and executed the same, in the supposition and belief that the description of the land in the contract, corresponded with the agreement made.

3. That when Watkins discovered the error in the contract, viz. : That the south line was not parallel to the north line, and by reason thereof, a larger quantity of land was included, he refused to perform the same, as to the land lying south of such parallel line, or to execute a deed thereof, but was willing to execute a deed for 100 acres, under and in pursuance of the agreement and at the contract price.

4. That at the time of the execution of the contract, Nash paid Dr. Watkins, to apply thereon, the sum of $200, which sum is all that Nash ever paid to apply on the purchase price.

5. That on and prior to the 4th day of December, 1848, Charles Cook was liable as indorser and guarantor upon notes made by Nash, as follows :

One note to Martin Hammond, dated May 1, 1848, and due May 1, 1849................................ $1,600 00
One note held by Chemung Canal Bank........ 900 00
One note held by Cook ...................... 197 00
Accounts of Cook against Nash of some amount, probably .......................... 300 00 or 400 00

Cook was also third indorser upon a note held by the Chemung Canal Bank of $600; two drafts of $2,000 each drawn by Alvah Nash upon D. N. Bedient, which drafts were accepted by said Bedient and indorsed by the plaintiffs in this case, as first and second indorsers, and by Charles Cook as third indorser, and said $600 note was in like manner indorsed, and said drafts were held by the Chemung Canal Bank.

These drafts and notes were not paid at maturity, and the indorsers were duly charged as such.

6. That at that time Nash had other paper or notes in said bank, as follows, viz.:

One note for................................ $1,800 00
One for.................................... 1,000 00
And one note for............................ 500 00

These notes were indorsed by the plaintiffs and not by Cook.

That the amount of these notes at said time, together with the two drafts and the $600 note, was $7,900.

7. That on the 4th day of December aforesaid, the said Nash found himself insolvent and unable to pay all of his debts in full, and to secure the said Cook, on account of his said liabilities (as well as his liability as indorser of the two drafts and the $600 note), he executed and delivered to Cook an assignment of the aforesaid contract, absolute in form, but the same was intended, and was in fact, a security.

8. That on the same day the said Nash executed and delivered to the plaintiffs a general assignment of all his pro-

perty and effects, in trust, for the benefit of his creditors, preferring the aforesaid $7,900; that the plaintiffs accepted the trust under said assignment, entered upon the discharge thereof; that plaintiffs have never been discharged from the trust.

9. That in the month of December, 1848, and shortly after the assignment by Nash, the plaintiffs gave their own note to the Chemung Canal Bank, for the said two drafts of $2,000 each, and the $600 note, less $200, which had been paid, which drafts and notes had then matured; that the said note, as given by the plaintiffs, was $4,400, the plaintiff, Green Bennett, being the maker, Charles M. Bennett, co-plaintiff, first indorser, and Charles Cook second indorser.

That at the time of giving said note, said drafts and notes were canceled by the bank, by their mark of cancellation, and delivered up by the bank to the plaintiff, Green Bennett, who from that time to the day of the trial of this cause, has held and had said drafts and note.

That said $4,400 note was renewed from time to time, until the month of November, 1849, same maker and indorsers, at which time Cook was obliged to and did pay said note to the bank.

10. That in 1849, the said Green Bennett made an assignment of his property to said Charles M. Bennett and W. H. Gibbs, in trust, for the benefit of his creditors.

That in the year 1854, said Green Bennett's debts were all paid, the purpose of the trust fulfilled, and his assignees ceased to act under the assignment, but have been formally discharged, and Green Bennett resumed and has ever since exercised exclusive control of all his property.

11. That on the —— day of November, 1849, the said Samuel Watkins and Charles Cooke made and entered into an agreement by which the said Watkins conveyed to Cook 283 acres of land, for the consideration, as expressed in said deed, of $5,000.

The said Watkins refused to recognize or perform said contract, as drawn, as to excess of land therein described, [but

was willing to and did recognize the validity thereof to the extent of 100 acres of land, and that it was a part of the arrangement between Watkins and Cook, that Watkins should and did convey by said deed, 100 acres of land under and by virtue of said Watkins contract.

And that in pursuance thereof, the said Cook, for said 100 acres, did pay said Watkins the balance unpaid upon said contract, that is to say, the sum of $1,300, with interest thereon, from the 10th day of August, 1845, to the date of said deed.]

And that the excess of land embraced in the description in said contract, and an additional 100 acres were included in said deed, and conveyed to said Cook, under an arrangement then made, separate and distinct from the Nash contract, and for a consideration then agreed upon and paid by the said Cook.

That from the date of said deed to the time of this trial, the said Cooke has been in possession of all the premises in said deed described, claiming to be the absolute owner thereof, and the heirs and sucessors of said Cook are in possession thereof.

12. That after the payment of the said $4,400 by the said Cook on the Chemung Canal Bank, and in the month of December, 1849, the said Cook brought an action in the Supreme Court of this State, against the plaintiffs herein, to recover the sum so as aforesaid paid by him.

That the said Green Bennett and Charles M. Bennett appeared in said action, and put in an answer, alleging:

That Cook received the assignment of said contract as collateral security for his contingent liability as indorser upon the said two drafts and note of $600, for which the note paid by him was given.

That he had taken a deed and possession of the land embraced in said contract, and that the value thereof exceeded the amount paid and claimed by Cook in said action.

That said Cook, by his reply to said answer, denied that he had received an assignment of said contract, or held the same as security for any liability contracted by him as

indorser of said drafts and note, or of the note thus paid by him to the bank.

That said action was litigated until February, 1854, when judgment was entered in Chemung county clerk's office for $6,332 damages, interest and costs, in favor of Charles Cook against Green Bennett and Charles M. Bennett.

13. That on the said 21st day of February, 1854, the said judgment was paid to Cook as follows, which is to be deemed a payment by Green Bennett for the purpose of this action:

| | |
|---|---:|
| Peter Tracy's check for | $4,164 00 |
| Charles and John Bennett's check for | 1,291 09 |
| Cash | 283 00 |
| Cook's receipt for | 374 80 |
| And in Green Bennett's check | 80 40 |

That said sum was borrowed by Green Bennett's sons of Tracy, they to repay the same.

That the assignees of Green Bennett sold said sons a farm held by them as such assignees of Green Bennett, and the consideration of such sale was the raising by those sons of the money to pay the said Cook judgment.

That the sum of $500 was paid by the plaintiff, Charles M. Bennett, from his individual funds on some of the debts referred to, which Nash owed, but on which of them does not appear.

14. That after the payment of said judgment, as aforesaid, and in 1854, the said Green Bennett commenced an action in the Supreme Court, upon said $2,000 drafts, against the said Legrand N. Bedient, as the acceptor thereof, and was non-suited in said action upon the trial thereof.

That the said plaintiffs never canceled said drafts nor authorized them to be canceled, and in the action commenced therein against said Bedient it was not adjudged by the court that the same could not be maintained by reason of the alleged cancellation of said drafts, but the same was dismissed for want of the proper parties.

15. That the said plaintiffs, nor either of them, have ever, before the commencement of this action, demanded of the said Cook the right of substitution or subrogation, or asserted to him any right or claim other than the right of redemption as the assignees of Alvah Nash.

As conclusions of law, from the foregoing facts, the referee held and decided:

1. That the deed herein mentioned, from Samuel Watkins to Charles Cook, to the extent of 100 acres herein conveyed, viz., the north 100 acres, was a mortgage or security, held by Cook as an indemnity for his individual liability for Nash, and his individual indebtedness against Nash.

And also, as an indemnity for his liability as an indorser upon the two $2,000 drafts drawn upon and accepted by Bedient, and the $600 note held by the Chemung Canal Bank.

2. That the plaintiffs, by the general assignment by Nash to them, as his assignees, had the right to redeem said 100 acres of land, by the payment of the amount for which Cook had the contract as a security, together with the amount which Cook paid Watkins as the unpaid purchase-money, but said right of redemption is now barred by the statute of limitations.

3. That by reason of payments made by the plaintiffs individually upon the debts of Nash, upon which the plaintiffs and Charles Cook were liable, and the payment of which was covered by the assignment of the Watkins contract to said Cook, among which was the judgment of said Cook against the plaintiffs above referred to, the plaintiffs have an equitable lien to the extent of the said payments by them respectively made, and unless the same shall be paid to them by the said Charles Cook, with interest, they have the right to be subrogated to all the rights of said Cook, in and to said premises, included in the said parallel lines, containing 100 acres, but such right of the plaintiff is subject to that of the defendants, to be first paid the amount remaining unpaid, of the claims and demands, to secure the payment whereof the said Charles Cook received the assignment of the said contract,

whether by indorsement by him, or for indebtedness to him by said Nash.

4. That the right of subrogation is not barred by the statute of limitations.

5. That the defendants have the right to pay to the plaintiffs the amount so by them respectively paid, of such debts and liabilities, and relieve said premises of the lien thereof, if defendants so elect, and in that case the amount so paid by the plaintiffs respectively be ascertained by the further hearing of this action; but, in case the said defendants do not so elect, then the said 100 acres be sold under the direction of the court, and out of the proceeds of such sale the defendants be first paid the amount to which they are entitled on account of the liabilities of said Charles Cook, for Nash, and the indebtedness of the latter to him, on account of which the assignment of said contract was made to secure the amount paid by said Charles Cook, of the purchase-money, together with defendant's costs and referee's fees in this action, and that there be paid to the plaintiffs the amount by them respectively paid, of such debts and liabilities, with interest, and surplus, if any, be paid to the defendants.

6. That the record of the said judgment in favor of the said Charles Cook against the plaintiffs, is no bar or defence to the claim of plaintiffs in this action.

7. That the cancellation of said two $2,000 drafts, and the discharge of the acceptor thereon, constitutes no defence, either in whole or in part, to the right of subrogation, or substitution of the plaintiffs, and to have the same paid out of said 100 acres of land.

The defendants excepted to the rulings of the referee except as to statute of limitations on the right to redeem. The plaintiffs excepted to the finding of the referee that the statute of limitations had run on their right to redeem.

Both parties appealed to the General Term, which held the statute of limitations had run both upon the right to redeem as assignees of Nash, and the right to subrogation as sureties.

*N. A. Halbert* and *T. W. Dwight*, for appellants, that a
renewed note attaches to it the incidental security which the
original had. (*Cleveland* v. *Martin*, 2 Head., 128 ; *Rogers* v.
*Traders' Ins. Co.*, 6 Paige, 383 ; *Boswell* v. *Goodwin*, 31
Conn., 74, 83.) No length of time of holding possession by
a mortgagee will bar the right of redemption if the mortgage
is treated during that time as a subsisting security for
the debt. (*Dexter* v. *Arnold*, 1 Sumner, 109 ; *Ayres* v.
*Waite*, 10 Cush., 72 ; *Click* v. *Rollins*, 44 Maine, 116 ; Story
on Equity, § 1028 ; *Calkins* v. *Isbell*, 20 N. Y., 147.) The
relation of surety and principal carries with it the right of
subrogation as to all securities placed in the possession of the
creditor as surety or co-surety. (*Matthews* v. *Aiken*, 1
Comst., 595 ; *Elwood* v. *Diefendorf*, 5 Barb., 399, 413 ; *Lewis*
v. *Palmer*, 28 N. Y., 271 ; *Craythorne* v. *Swinburne*, 14
Vesey, 159 ; White and Tudor's Leading Cases, and cases
cited, vol. 1, 144–163 ; *Hayes* v. *Ward*, 4 John. Ch., 123.)
Securities are a trust fund for the payment of the debt. (*But-
ler* v. *Birkey*, 13 Ohio U. S., 574 ; 8 Ala., 866 ; 3 Grattan,
358 ; *Agnew* v. *Bell*, 4 Watts, 31, 33 ; *Carpenter* v. *Kelly*, 9
Ohio, 106 ; *Pool* v. *Williams*, 8 Iredell, 286 ; *Hayes* v. *Ward*,
4 John. Ch., 123.) The same rule applies to co-sureties.
(*West* v. *Belcher*, 5 Munford, 187 ; *McMahon* v. *Fawsett*, 2
Randolph, 514 ; *Rice* v. *Morton*, 19 Missouri, 261 ; *Elwood*
v. *Diefendorf*, 5 Barb., 399 ; *Agnew* v. *Bell*, 4 Watts, 31, 33 ;
1 White and Tudor's Leading Cases, 162 ; *Butler* v. *Birkey*,
13 Ohio U. S., 514 ; 1 Story on Equity Jur., § 499, and cases
cited ; *Ramsey* v. *Lewis*, 30 Barb., 403.) It is well settled
that there can be no subrogation as long as the principal debt
or any part of it remains unpaid. (*Kyner* v. *Kyner*, 6 Watts,
221 ; *Bank of Penn.* v. *Potius*, 10 Watts, 148 ; *Cottrell's
Appeal*, 23 Penn. [11 Harris], 295 ; *Stamford Bank* v. *Bene-
dict*, 15 Conn., 437.) The principle is well settled that any
relief can be granted consistent with the facts stated or
proved, and when the facts are elicited, the pleadings, if neces-
sary, will be amended as to parties or otherwise, or regarded
as amended. (48 Barb., 96 ; 30 N. Y., 391 ; Code, §§ 173, 275.)

*Francis Kernan*, for the respondent. The referee and court below were right in holding that this claim was barred by the statute. (2 R. S., 301 [1 ed.], § 52; Code, § 97; *Roberts v. Sykes*, 30 Barb., 173; *Bruce v. Tilson*, 25 N. Y., 194; *Huntington v. Mather*, 2 Barb., 538.) The question whether the land contract was transferred to Cook as collateral security against his indorsement of this note and the two drafts was conclusively settled between these parties by an action, which resulted in Cook's favor. The Bennetts are estopped by that record from questioning this fact in the present suit. (*Gates v. Preston*, 41 N. Y., 113; *Davis v. Talcott*, 12 N. Y., 184, 188; *Bellinger v. Craigue*, 31 Barb., 534; *Foster v. Milliner*, 50 Barb., 385; *Harris v. Harris*, 36 Barb., 88; *Hayes v. Reese*, 34 Barb., 151, 156; *Demarest v. Day*, 32 N. Y., 281.)

Peckham, J. In my opinion the report of the referee was substantially right. The question is, was the note for $4,400 given to and received by the bank in payment of the two drafts, etc., so as to enable the plaintiffs to call upon the defendant for the security he held against his liability on that claim? In the first place no payment is found by the referee and every presumption is in favor of the report for affirmance, not for reversal. In the next place the defendant after this alleged payment and extinction of these drafts by this indorsed note, advised and urged their prosecution against the acceptor. He knew all the facts in regard to the alleged payment, and certainly he would never have advised the prosecution of extinguished securities. They were prosecuted accordingly, but the suit failed because brought in the wrong name. The only evidence on the subject of payment, is that the bank received this indorsed note for these drafts and a note, and sent them to the plaintiffs with the bank mark of cancellation thereon, without any other evidence of agreement or authority to cancel them than is implied in the receipt of said indorsed note, and that evidence the referee did not seem to hold sufficient to satisfy him that it was received in

payment. The case of *House* v. *Buf. N. Y. and E. R. R.* (37 N. Y., 297) is an authority that where the note of a surety is received by the creditor in payment, the surety may sue his principal for indemnity as for money paid. That case does not aid the defence. The true question is, was this note a payment as between the plaintiffs and Cook the defendant? If it were, then of course they had a cause of action against the defendant at that time, and as more than ten years have elapsed prior to the commencement of this suit, all claim for subrogation must be barred. But it must be a payment as between these parties. The plaintiffs, to enable them to call upon the defendant to turn out to them the securities he holds for his own indemnity against these debts, must show that they have paid them and discharged the defendant from liability. Have they done so? If this could be called a payment they might as well have demanded the security from Cook before as after these drafts were taken up, as Cook's position is in no degree improved. He was liable on the drafts after the plaintiffs; such is his position on the note. He is even worse off. If the drafts were thus paid and extinguished, he thereby loses all claim upon the acceptor of the drafts. Thus he not only is discharged from no liability, but he loses some security, and the plaintiffs might demand that he surrender up the rest. It is quite clear that this transaction did not cancel those drafts as against the acceptor, though it might as against the bank. It was plainly contrary to the interest and intention of the parties to the $4,400 note. It seems to me equally clear that the relations of the securities as to each other remained unchanged. The defendant was not discharged from liability as security for that draft. He might be, and in fact was, called upon to pay the new note. Authorities are cited, if authority be needed for such a proposition, that before a surety can demand subrogation, the party who holds the securities must be discharged from all liability for the debt on account of which he holds them. (*Kyner* v. *Kyner*, 6 Watts, 221; *Bank of Penn.* v. *Potius*, 10 id., 148; *Cotrell's Appeal*, 25 Penn. (11 Harris), 294;

*Stamford Bank* v. *Benedict,* 15 Conn., 437, and many others.) If the plaintiffs could demand this security from the defendant before they had paid the new note, then the defendant would be left as surety thereon ; as surety for the plaintiffs without any security whatever.   There is no equity in that.   In fact, it is not denied by the defendant that the debt should be paid before any claim could be made for subrogation.   But it is insisted that the defendant became indorser upon this new note without any reference to his liability upon the demands for which they were given, a mere accommodation indorser thereon for the plaintiffs without any security.   There is no such proof, and the presumption is the other way, under all the facts of this case.   The right to demand this security from the defendant, then, or in other words, the cause of action, arose only when this $4,400 note was paid.   That was paid by satisfying the judgment recovered thereon in 1854, and hence this action is barred by no statute.   The judgment upon this $4,400 note was no bar to this action.   If the defendant had then received the money upon the securities he held for this demand, it would have been different ; as the case stood, it was no bar.   At most, the court might have ordered that the defendants then, upon payment of the judgment, might be subrogated in the place of Cook, as to his securities for that demand.   The Supreme Court, I think, was right as to the claim of the plaintiffs as assignees, that it was barred by the statute.   That provision applies, or there is no statute bar.   (Code, § 97.)

The judgment of the General Term of the Supreme Court is reversed, and judgment absolute is given for the plaintiffs, according to the report of the referee, with costs.

All concur except ALLEN and ANDREWS, JJ., who, not having heard the argument, did not vote.

Judgment absolute for the plaintiffs.