Daniels, J.
The object of the action was to obtain an accounting for forty railroad bonds of $1,000 each issued by the Utah & Pleasant Valley Railway Company and delivered to the defendant, as security for the payment of five promissory notes made by Charles W. Schofield and endorsed by the plaintiff, amounting in the aggregate to to the sum of $20,000. The notes were made aná endorsed for the benefit of Scofield, and after their making and endorsement, were at his instance discounted by the defendant. They were endorsed by the plaintiff for the use of Schofield under an agreement that they should be secured by the deposit of these railway mortgage bonds. And that the defendant understood the endorsement of the notes by the plaintiff to be for the benefit and use of Scofield who made them, is not only to be inferred from the transaction through which the defendant received the notes, but also from the form of the notes themselves, for they were made payable to the order of the plaintiff. And as they were in the possession of Scofield, the maker, after the endorsements placed upon them by the plaintiff, that was a circumstance pointing directly to the fact that the- plaintiff *110 had endorsed them for the benefit of Scofield and to enable him to usé them in his own transactions. An agreement was made by Scofield with the plaintiff at the time when the notes were endorsed and received providing for the use_ which was made of them; that is, that they should be discounted by the defendant, and that the forty bonds of the Utah and Pleasant Valley Railroad Company should be deposited with them, as security for their payment. When these notes became due, others in a similar form, but payable to the order of Scofield, were made and endorsed in like manner, and delivered 'to the defendant. These notes were alleged in the complaint to have been given to renew the preceding notes, and that allegation was admitted by the defendant’s answer. When the first notes were received by the defendant he executed, and delivered an instrument in the following form:
“Received of H. P. De Graaf, Esq., through C. W. Scofield, Esq., forty U. and P. V. bonds ($1,000 each), as collateral to C. W. Scofield’s notes for $40,000.
“ October 11, 1879.
“ J. F. WYCKOFF.
“Indorsed by H. P. De Graaf.”
The above note or notes is total $20,000, as follows:

October 6.

C. W. S., “Ind.” himself, and H. P. D. G., due February 6........ $3,500
“ “ “ “ 3,000
“ " “ “ 3,500
“ “ “ “ 5,000
“ “ “ “ 5,000
Forty bonds as collateral. $20,000
And from that it distinctly appears that the security created by the deposit of the bonds, was for the ultimate benefit of the plaintiff as endorser upon the notes. And that in fact carried out the stipulations made by Scofield, with the plaintiff, that if he failed to pay the notes at maturity, ana the endorser should be called upon to pay them, in that event the plaintiff as endorser should receive the bonds and sell the same for the best price he might obtain at the time, and with the proceeds pay the notes, and in case of deficiency Scofield further agreed to pay the same at once. After that, and before the first series of notes matured, at the instance and for the benefit of Scofield, the plaintiff wrote and transmitted through Scofield to the defendant the following letter:
*111 New York, December 30, 1879.
J. F. Wyckoff, Esq. :
Dear Sir—You have my consent to substitute forty first mortgage bonds of the Wasatch and Jordan Valley Railway Company bonds, instead of the forty bonds you now hold of the Utah and Pleasant Valley Railway Company on loan to C. W. Scofield, of $20,000, with my endorsement.
Yours,
H. P. DE GRAAF.
Under which the bonds were delivered by the defendant, to Scofield, and forty other bonds of the denomination of' one thousand dollars each, with seven per cent, interest, were received by the defendant. But these forty substituted bonds were not the first mortgage bonds of the Wasatch and Jordan Valley Railway Company, but they were bonds issued by the company of that name, and stated upon their face to be secured by a first mortgage-“upon the whole of the railroad fine from Bingham Precinct, and thence by way of Sandy Station to Granite, thence to Alta, in Little Cottonwood, Canon, and also from. Granite to Big Cottonwood, Canon, all in Salt Lake-county,” in the territory of Utah. Those bonds were issued on or about the 1st of May, 1879, and were seemed by a mortgage upon this property, while the first mortgage bonds of the Wasatch and Jordan Valley Railroad Company were issued in the year 1873, for the sum of $500 each, payable with interest at the rate of nine per cent, and such bonds were outstanding, and by means of the collateral mortgage were a first hen upon the Wasatch and Jordan Valley Railroad. And that these bonds had been so issued and were outstanding was a fact which it appears from the evidence of the defendant was at the time known to him. This was shown by his own cross-examination as a witness, and also by an affidavit made by him to obtain the arrest of Scofield for inducing him to receive these substituted bonds in place of those which he surrendered. Upon that subject nis statement was that: “I said to Mr. Scofield: Some months ago I had from you, of the denomination of $500, some bonds of the Wasatch and Jordan Valley Railroad Company, which I understood were first mortgage bonds. How do you say that these that you now offer me are first mortgage bonds?” His answer was: “I have made a pool for the bonds of the old issue, and as fast as any of these ones which I now offer you are put out I retire a corresponding amount of the others, so that these are first mortgage bonds.” He further deposed and stated in the affidavit that he found out subsequently that Scho *112 field never had pooled the original bonds as he represented he had, and that the mortgage given to secure them was being foreclosed. And he stated that this “previous issue was really the only first mortgage bonds the Wasatch road had issued.” In place of these bonds, which by the authority of the plaintiff the defendant was to receive upon the surrender of the Utah and Pleasant Valley Railroad bonds, he received what'was in substance and effect a second mortgage bpnd issued upon a consolidated road formed in part by the original Wasatch and Jordan Valley Railroad. This consolidation was made with the Bingham, Canon and Campfloyd Railroad, and an extension was added to that. But at the time of the consolidation a preceding first mortgage to secure bonds had been created upon the Bingham, Canon and Campfloyd Road. And the only portion of the railroad first mortgaged to secure the series of bonds received by the defendant in place of the Utah and Pleasant Valley Railway bonds, was that which was added to the road of the Wasatch and Jordan Valley Railroad, and the road of the Bingham, Canon and Campfloyd Railroad, and these bonds were stated to have been substantially worthless.
Before the second series of notes became due, the plaintiff, as their endorser, requested the defendant to take them up from banks which had discounted them for his benefit. And to induce the defendant to take up the second series of notes, a further agreement was made with him which he has stated in the course of his evidence in the following language:
Mr. De Graaf said he was indorser on a large amount of Mr. Scofield’s paper, and unless he was accommodated by those who held it, he would have to fail inevitably, and appealed to me to provide money to take up those notes, and said he would give his own notes at four months if I would do so; the first note was coming due the .next day; I agreéd, notwithstanding the shortness of the time, to provide this $20,000, to take up these notes, on his pledge and agreement to give me his own notes for four months for that amount, with interest; accordingly I did thereafter go to the bank and pay those notes ■ at their respective maturity, and advanced the money myself for that purpose. And that substantially appears to have been the nature of the agreement made at that time between tüese parties. Before the notes were made which the defendant under this agreement was entitled to receive, the plaintiff discovered the fact that the bonds which had been substituted for those of the Utah and Pleasant Valley Railroad Company were not the first mortgage bonds of the Wasatch and Jordan Valley Railroad Company, but were forty of *113 the series of bonds which in substance and effect were but second mortgage bonds. And on that account he seems to have declined to make and deliver to the defendant the notes mentioned in this agreement. And because of the refusal, an action was brought by the defendant against the plaintiff, in the court of common pleas of the county of New York, to recover the amount paid and advanced by him to take up the second series of notes, which, the former had procured to be discounted, and upon the trial of that action a verdict was recovered for the amount of the notes in favor of this defendant and against the plaintiff. This was set aside by the general term upon exceptions ordered to be there heard in the first instance, but from that determination an appeal was taken to the court of appeals, where the decision of the general term was reversed, and judgment was ordered for the present defendant upon the verdict. Wyckoff v. De Graaff, 98 N, Y., 134.
And after the recovery this action was brought by the plaintiff, who was defendant in that action, to compel the plaintiff in that action, who is the defendant in this suit, to account for the value of the bonds which he had surrendered, without receiving those which according to the letter of the plaintiff were to have been substituted in their place. During its pendency the plaintiff paid into the hands of the chamberlain of the city and county of New York the amount of the judgment so recovered against him, with interest thereon to the credit of the action in which the recovery was secured, pursuant to an order made by this court on the 2d of April, 1885. And by the judgment, which proceeded upon the facts which had been stated, the defendant was held liable to account for the bonds surrendered by him to an amount not exceeding that which was due upon the judgment recovered by him against the plaintiff.
Under the circumstances which have been proved, it is clear that the plaintiff was entitled to the benefit and advantage of the forty bonds of the Utah and Pleasant Valley Railroad Company delivered to the defendant to secure the notes. It is not important to determine whether in strictness he was a surety merely upon the notes, for as the facts were made to appear, he was entitled to have the bonds, used and appropriated either by himself or the defendant, for the payment of the indebtedness created by the notes. And of that fact the defendant was clearly aware, according to his own evidence and the receipt of the 11th of October, 1879, as well as from the letter of the 30th of the following December, written to him by the plaintiff. And he having surrendered the bonds without complying *114 with the authority under which that alone could be done, became liable legally to the plaintiff for the loss and injury sustained by him through that surrender, Humphrey v Hayes, 94 N. Y., 594; Grow v. Garlock, 97 id., 81; National Exchange Bank, etc., v. Silliman, 65 id., 475.
Under the principle settled by these authorities the defendant did incur a liability to the plaintiff to indemnify him against the effect of this unauthorized act.
It has, however, been insisted that the judgment which was recovered in the court of common pleas was a bar to the present action brought by the plaintiff. But from the nature of the agreement alleged in the complaint as the foundation of that action, and as it has been stated by the defendant in the course of his examination as a witness upon the trial of this suit, it is quite evident that the question of the defendant’s liability for the misappropriation of the bonds, was not included in that suit as it was presented by the plaintiff. For that was. a separate and distinct transaction, preceding the making of the agreement upon which the suit in the court of common pleas proceeded and was tried, and relating to a different subject matter. The agreement of the defendant under which the bonds of the Utah and Pleasant Valley Railway Company were received included no more than the obligation of the defendant to hold and use those bonds for the reimbursement of himself and the protection of the plaintiff' as indorser upon the notes, and that agreement was changed no further than to permit the defendant to receive in place of such bonds forty of the Wasatch and Jordan Valley Railway Company’s first mortgage bonds, while the agreement upon which the action proceeded in the court of common pleas was that the plaintiff would reimburse the defendant for the moneys he might advance in taking up the second series of the notes, and would make and deliver his own notes to the defendant payable in four months for that amount, with interest. The two agreements were distinct and independent, and a recovery by the defendant for the non-performance of that which was made under which the notes were taken up, by no possibility could include the failure of the defendant to comply with the authority given to him for the surrender and substitution of the bonds. The judgment in the action in the court of common pleas did not pass upon the point on which the present suit is dependent, and it is not therefore a bar to the prosecution of this action. Sweet v. Tuttle, 14 N. Y., 465.
The present plaintiff in the action in the court of common pleas did set up by way of defence this misappropriation of the bonds, but that defense was excluded upon the objection of the plaintiff in that action. And after obtaining its *115 exclusion in that manner, he cannot with any legal propriety, insist upon it that the subject-matter in this action was barred by the judgment in the other suit. If the objection had not been taken by him it might have been there tried as a counter-claim, as it was set up in the answer. But having taken the objection and excluded the contest entirely from the consideration of the court of common pleas, he is not now at liberty to assert that the controversy in this action could, or should have been there tried and disposed of.
In its essential facts the case is quite similar to that of Bennett v. Cook (45 N. Y., 268), where the right to maintain such an action was sanctioned and sustained by the court.
A large number of exceptions were taken during the trial to the rulings of the court under which evidence was received and rejected. Those relating to the right of the plaintiff to prove the agreement between himself and Scofield and the defendant, and the effect of the judgment in the court of common pleas, have all now been considered. An exception was taken to oral evidence given by the plaintiff to establish the fact that an execution issued upon a judgment recovered by him against the defendant, had been returned unsatisfied. • The object of this evidence was to prove so far as that fact might be considered important, the defendant’s insolvency, and-it was pertinent to that object; and even if the objection should have been sustained that the judgment and execution should be produced as the best evidence, that will confer no legal benefit upon the defendant, for the judgment and execution were afterwards produced and proved upon the trial.
This evidence tended to establish the fact of the defendant’s insolvency, and it was not so far overcome by his own testimony as to render it the duty of the court to find the fact otherwise than it did, and that was that the defendant was insolvent. It has been insisted that this proof should not have been received, as there was no allegation of fact of his insolvency in the complaint. But while that is true, the proof of the fact did not mislead the defendant in the least degree, and the court could, therefore, very well disregard the objection. The evidence of the plaintiff concerning the value of the first mortgage bonds of the Wasatch and Jordan Valley Bailroad is not liable to the objection now relied upon in support of the appeal. His statement was that there was no market value for the bonds, but they were worth from eighty to ninety per cent. That was stated as a fact within his knowledge, and it may have very well been so from his familiarity with the bonds and the railway enterprise brought in controversy in this action. *116 There was no objection taken to this evidence, but a motion was made to strike it out without the assignment of any reason whatever indicating that it should not have been received. It was pertinent to the case, and, as the statement appeared to be within the knowledge of the witness, it could not have been stricken out by the court. The evidence which it was proposed to give to show the understanding of the defendant, and also of Scofield, as to what bonds should be, or might be, substituted, was legally excluded, for the transaction was reasonably clear and the obligations of the parties were well defined by the written instruments which were made to affect it, and the understanding of those instruments by either of these persons was not competent as any indication of the construction which should be placed upon them. So it was proper to exclude the evidence tending to show that the second series of,notes had been given upon a new discount, or that the first series had in fact been paid, for the pleadings in the action had settled the manner in which the second series of notes had been obtained, and no defense of payment was alleged. The court was requested to change the pleadings in this respect, but declined to do so, and, under the circumstances, that refusal does not seem to have been improper. Some other objections were also presented during the trial, but neither of them are worthy of any special consideration. They were properly disposed of at the time when were made.
By the judgment in the action, the plaintiff was permitted to recover so much of the value of the forty first mortgage bonds of the Utah and Pleasant Valley Eailway Company as would extinguish the amount of the judgment recovered against him by the defendant in the court of common pleas. But to that extent the recovery does not seem to be warranted by the facts, for the first mortgage bonds of the Wasatch and Jordan Valley Eailway Company amounted to no mpre than the sum of $500 each, aggregating for the forty which the defendant was permitted to substitute for those surrendered by him the sum of $20,000. The injury which resulted to the plaintiff by the surrender of the forty bonds of the Utah and Pleasant Valley Eailway Company was no more than the amount of the security he had, been deprived of by the omission of the defendant to receive forty-five $100 bonds of the Wasatch and Jordan Valley Eailway Company, and they were worth no more, according to his own evidence, than the sum of from eighty to ninety per cent, although by his cross-examination it was shown that sale had been made as high as par, and that is the valuation which, by the decision of the court at the trial, has been given to them. Their value *117 has not been stated with any greater definiteness than that of the plaintiff in his evidence as a witness upon the trial, and that is that they were worth from, eighty to ninety per cent of their par value, and had sold for over eighty per cent and as high as par. His valuation is the utmost loss sustained by the plaintiff by the failure of the defendant to comply with his authority for the surrender and substitution of the bonds. As to the residue of the amount of the bonds given up, they were legally surrendered both by the authority of himself and of Schofield, the other party to the transaction, and that surrender was made prior to any assignment, of his interest in the bonds to the plaintiff.
It was stated in the defendant’s affidavit, which has already been referred to, that a foreclosure had been made of the mortgage to secure the original bonds of the Wasatch and Jordan Valley Railway Company, realizing as he believed about thirty cents on a dollar, but that* circumstance was entitled to no controlling effect in the action by way of defence, for the proceeds could not by any possibility be received by the plaintiff. The case as it was before the court should have been disposed of according to the valuation placed upon these bonds, excluding the excess over them in the valuation of the bonds which the defendant without authority had surrendered. In this respect the judgment should be reduced. As the facts have been found, the plaintiff cannot certainly be held entitled to recover more" than eighty per cent of the value of the Wasatch and Jordan Valley Railway Company’s bonds, and that valuation will reduce the defendant’s liability to the sum of $16,000, with interest upon it from the 30th day of December, 1879. The judgment should therefore be reversed and a new trial ordered, with costs to abide the event, unless within twenty days after notice of the decision the plaintiff shall stipulate to reduce the judgment to this extent, and the allowance made in a corresponding manner. If that stipulation shall be given, then the judgment as so modified should be affirmed, without costs of the appeal to either party.
Brady, J., concurs.