## BONHOFF v. WIEHORST et al.

(Supreme Court, Trial Term, Cattaraugus County. July 29, 1907.)

1. MORTGAGES—TRANSFER OF PROPERTY MORTGAGED—ASSUMPTION OF MORT-
   GAGE DEBT BY PURCHASER—"LAWFUL DEBTS."

   Plaintiff's husband gave his bond for the payment of money, secured by a mortgage on his farm, in which plaintiff joined. The husband died, devising the farm to plaintiff, who deeded it to her son, who assumed and agreed to pay the mortgage, but failed to do so. On the death of the son, without issue, his widow, having a dower in trust in the farm, executed a quitclaim deed of it to plaintiff and the other heirs, subject to decedent's "lawful debts," which plaintiff assumed and agreed to pay. *Held* that, since plaintiff did not sign the bond and was not personally liable for the mortgage debt, the covenant of her son to pay it was not enforce-

able against him, and hence the covenant in the deed from his widow to plaintiff did not obligate plaintiff to pay the debt; a claim not enforceable at law not being a "lawful debt."

2. SAME—FORECLOSURE—DEFICIENCY AND PERSONAL LIABILITY.

A grantee of mortgaged premises, whose conveyance recites that the land is conveyed subject to a mortgage, and that the grantee assumes and agrees to pay the same as part of the consideration, is not liable for a deficiency arising on a foreclosure and sale, in case the grantor was not personally liable for the payment of the mortgage.

3. SAME—"LAWFUL DEBTS."

Plaintiff transferred a farm and certain farm stock and implements to her son, who paid no cash, but gave plaintiff a mortgage on the farm. On the son's death without issue, his widow, having a dower interest in the farm, executed a quitclaim deed of it to plaintiff and the other heirs, plaintiff agreeing to pay all of decedent's "lawful debts," and she also conveyed to plaintiff all the farm stock and implements. *Held*, that the mortgage given by decedent was one of his "lawful debts," and plaintiff was not entitled to foreclose the mortgage on the farm.

4. SUBROGATION—GRANTEE OF INCUMBERED PROPERTY—PROTECTION OF INTEREST IN PROPERTY—LIFE TENANT.

The grantee of a life estate in mortgaged land who, to protect her estate, paid the mortgage debt became subrogated to the rights of the mortgagee; the payment operating primarily for the use of the remaindermen, as well as for the protection of plaintiff's life estate.

5. LIFE ESTATES—INCUMBRANCES—DUTY OF LIFE TENANT.

It is the duty of a life tenant to pay interest on a mortgage on the property, but he is under no legal obligation to pay the principal.

6. LIMITATION OF ACTIONS—ACCRUAL OF RIGHT OF ACTION—SUBROGATION.

Where a life tenant paid a mortgage on the property for the protection of her life estate and became subrogated to the rights of the mortgagor, she had 20 years from the time of the final payment in which to foreclose the bond and mortgage, which were under seal.

7. SUBROGATION—PROTECTION OF INTERESTS.

Where a life tenant from time to time made payments on a mortgage on the property in order to protect her life estate, such payments were not to be regarded as pro tanto satisfactions and releases of the original indebtedness, but the tenant had, as to the remaindermen, the right to keep the mortgage alive for the protection of her rights and interest.

8. LIMITATION OF ACTIONS—PART PAYMENT—PRINCIPAL AND INTEREST OF MORTGAGE—PAYMENT BY LIFE TENANT.

Where a life tenant of mortgaged property, in order to protect her life estate, from time to time made payments of principal and interest on the mortgage, which was past due, each payment of interest operated as a new admission of indebtedness, sufficient to postpone the running of the statute of limitations against the life tenant's right, on paying the debt in full and being subrogated to the mortgagee's rights, to foreclose the mortgage as against the remaindermen; since in making such payments the tenant represented the whole estate and all interested therein.

9. SUBROGATION—PROTECTION OF INTEREST IN PROPERTY—EXTENT OF RIGHT—LIFE TENANT.

Where a life tenant of mortgaged property, for the protection of her life estate, paid off the mortgage, she was entitled to recover from the remaindermen only the principal sum advanced by her, since it was her duty as life tenant to keep down the interest charge, and since as such tenant she was entitled to all income derived from the property in excess of such interest charge.

Action by Dora Wiehorst Bonhoff against William Wiehorst and others. Judgment for plaintiff.

W. G. Laidlaw, for plaintiff.

E. D. Northrup, for defendants John Nannen and Mark Facklam.

Thomas Dowd, for infant defendants.

WHEELER, J. This is an equity action in which the plaintiff seeks the foreclosure of two mortgages on real property situate in Cattaraugus county. On March 17, 1873, Henry Wiehorst, the former husband of the plaintiff in this action, was the owner of the premises described in the complaint, and on that day borrowed from one Frederick Jark the sum of $2,500 for the purpose of paying off and discharging an existing mortgage on the premises in question. To secure the payment of this money, Henry Wiehorst gave to Jark his bond conditioned for the payment of said sum of $2,500, with interest, $1,600 thereof to be paid in eight equal annual payments, and the remaining $900 of the principal in 12 years from its date. As collateral to the bond, Henry Wiehorst and Dora, his wife (this plaintiff), executed to Jark a mortgage covering the premises in question and 25 acres subsequently sold and conveyed to one George Brown. Henry Wiehorst died on the 9th day of April, 1877, leaving a last will and testament dated March 27, 1877, and subsequently duly admitted to probate, in and by which he devised all his estate, both real and personal, to his widow, Dora Wiehorst, who thus became the owner of the premises subject to the Jark mortgage. On the 26th day of November, 1881, this plaintiff deeded and conveyed the mortgaged premises to her son, Charles Wiehorst. The deed to Charles Wiehorst recited that the conveyance was made subject to the Jark mortgage, and contained a covenant on the part of the grantee to assume and pay $2,150 of the principal of said Jark mortgage, the balance to be paid by Brown as a part of the purchase price of the 25 acres sold to him. It would seem that at the time of this conveyance of the realty to Charles Wiehorst the mother also sold and transferred to her son all the farm stock and implements on the place. Beyond a doubt Charles Wiehorst paid his mother nothing for either the real or personal property transferred, but he did execute and deliver to her a mortgage covering the farm acquired conditioned for the payment by him of the sum of $1,350 in 15 years from its date, with interest. No payments appear to have been made by Charles Wiehorst either upon the Jark mortgage or the mortgage given his mother, except payments of $75 January 2, 1884, and $50 February 26, 1884, on the Jark mortgage. Charles Wiehorst died intestate on November 15, 1884. He left him surviving no issue, but a widow, Mary Wiehorst, (now Mary Facklam), his mother, Dora Wiehorst, a brother Henry Wiehorst (who died intestate and unmarried January 17, 1890), a brother, William Wiehorst, and a sister, Mary Wiehorst (afterwards Mary Nannen), who died November 13, 1903, intestate, and who was the mother of the infant defendants in this action. It will be seen that Dora Wiehorst thus became vested with a life estate in the mortgaged property, with a remainder in fee in her children, Henry Wiehorst, William Wiehorst, and Mary Wiehorst, subject to the right of dower of the widow of Charles in the property in question.

On January 10, 1885, the widow, Mary Wiehorst (now Mary Facklam), executed a quitclaim deed of the premises in question to the said

Dora Wiehorst (the plaintiff), Henry Wiehorst, William Wiehorst, and Mary Wiehorst (afterwards Mary Nannen). The consideration expressed in this deed was $5, and it contained the following clause:

"This conveyance is made subject to the lawful debts owing by Charles Wiehorst at the time of his decease, which debts the said Dora Wiehorst hereby assumes and agrees to pay. And the said Mary Wiehorst, widow, aforesaid, does hereby sell, grant, release and convey to said Dora Wiehorst all her right, title and claim to the chattels and personal property on said farm now mortgaged to Frederick Jark by a certain chattel mortgage executed by said Dora Wiehorst and assumed by said Charles Wiehorst, also one span of horses now on said premises, nine cows, one lumber wagon, one single buggy, one double buggy, one mowing machine, one single harness and two double harnesses, one drag, one cutter, one pair of bobs, one horse wagon, and all the hay, fodder and grain and farming implements on said premises, three calves, all of said personal property now being on said premises."

The plaintiff took possession of the property as life tenant, and as such has enjoyed the use and occupation and the rents and income therefrom to the present time. She paid all the unsecured debts of her son Charles, and also erected a monument or headstone at his grave. The Jark mortgage by its terms became due and payable, and the plaintiff made payments both of principal and interest on this mortgage from time to time until the same was finally paid in full. The last payment was made on January 6, 1896, at which time Jark gave a formal satisfaction of the mortgage. None of the moneys in payment of the Jark mortgage were advanced by the remaindermen or owners of the fee, but all appears to have been paid by the plaintiff. The plaintiff now seeks to foreclose both the Jark mortgage and the mortgage given to her by her son Charles Wiehorst for $1,350. As to the Jark mortgage, the plaintiff claims to be equitably subrogated to the right of Jark by reason of her payment of the mortgage, and asks the decree of the court adjudging and decreeing the amounts so advanced to be a first lien on the premises in question.

The answering defendants contest the plaintiff's claim, and insist that by the terms of the deed from Mary Wiehorst to Dora she covenanted to pay all the debts of Charles, and that among the debts were the two mortgages in question, and that, therefore, the plaintiff ought not to maintain this action. The statute of limitations is also set up and relied on as a defense. The plaintiff's counsel contends that the covenant in the deed referred to properly construed, wherein the grantee covenanted to pay the lawful debts of Charles, does not apply to anything but unsecured debts, and to this end considerable testimony was given as to the surrounding facts and circumstances at the time of its execution for the purpose of aiding the court in arriving at what is claimed was the real intention of the parties. After carefully considering the facts, the court is clearly of the opinion that the covenant contained in the deed from Mary Wiehorst to Dora Wiehorst did not obligate the plaintiff to pay the Jark mortgage. The clause in question reads as follows:

"This conveyance is made subject to the lawful debts owing by said Charles Wiehorst at the time of his decease, which debts the said Dora Wiehorst hereby assumes and agrees to pay."

The Jark mortgage was given by Henry Wiehorst and Dora, his wife, to secure the individual bond of Henry Wiehorst. Henry Wiehorst died seised of the fee, and by his last will and testament devised the farm in question to the plaintiff. By the will she became owner of the property, but in no way became personally obligated to pay the mortgage indebtedness. It is true that by her deed to her son Charles he assumed and agreed to pay $2,150 of the mortgage indebtedness; but, inasmuch as his grantor, Dora Wiehorst, was not personally bound to pay the mortgage, the covenant of Charles to pay it was not enforceable against him, and, in the event of a foreclosure and a resulting deficiency, judgment for such deficiency could not have been lawfully obtained against him. Vrooman v. Turner, 69 N. Y. 280, 25 Am. Rep. 195; Dunning v. Leavitt, 85 N. Y. 30, 39 Am. Rep. 617; Cashman v. Henry, 75 N. Y. 103, 31 Am. Rep. 437. The cases cited fully establish the doctrine that a grantee of mortgaged premises, whose conveyance recites that the land is conveyed subject to a mortgage, and that the grantee assumes and agrees to pay the same as part of the consideration, is not liable for a deficiency arising upon a foreclosure and sale in case the grantor was not personally liable legally or equitably for the payment of the mortgage.

It therefore follows that in the deed from Mary Wiehorst to Dora Wiehorst and others, inasmuch as Dora Wiehorst only agreed to pay the "lawful debts" of her son Charles, it cannot be held that she in law covenanted and agreed to pay this mortgage, for it is not a "lawful debt" of Charles within the decided cases. A "debt" is defined as "that which is due from one person to another, whether money, goods or services; that which one person is bound to pay to or perform for another, that which one is obliged to do, or suffer." Imperial Dictionary. Latimer v. Veader, 20 App. Div. 426, 46 N. Y. Supp. 823. A claim or demand not enforceable at law cannot be said to be a "lawful debt," and we must, therefore, conclude that under the facts established in this case the Jark mortgage was not covered by the terms of the agreement in the deed in question. As to the mortgage for $1,350, this was the personal obligation of Charles Wiehorst, running direct to the plaintiff. The plaintiff's evidence tends to show that the farm in question was worth little, if any, more than the amount of the first mortgage. As the evidence tends to show that at the time this farm was deeded to Charles Wiehorst there was also turned over to him the farm stock and implements, some of which at least purported to be covered by a chattel mortgage to Jark as additional security for a portion of his mortgage claim; and, as Charles paid nothing in cash to his mother, it is fair to presume that the mortgage for $1,350 represented not only the purchase price for the equity in the farm, but also the purchase price of the personal property transferred at the same time. When the widow of Charles gave her quitclaim deed to the plaintiff containing a bill of sale of all this personal property, it practically returned to her the same personal property previously sold to her son, and it is fair to assume it was her intention to relieve Charles' estate from the personal obligation he had given and represented by his mortgage for $1,350. And, while it may be fairly said the plaintiff was

not put in as good a position as she occupied prior to her sale to her son, nevertheless perhaps the arrangement was the best she could have made under all the circumstances. At least, this court is not prepared to hold that this mortgage of $1,350 was not embraced within the term of the deed given by Mary Wiehorst to the plaintiff, in which the plaintiff agreed to pay Charles' lawful debts. On the contrary, we are of the opinion that had the plaintiff foreclosed this latter mortgage, and sought a personal deficiency judgment against the estate of Charles, the representative·of his estate might have successfully set up the provisions of the deed and the agreement it contained as a bar to any recovery by reason of this mortgage. And for these reasons we are of the opinion the plaintiff is not now entitled to a decree of foreclosure of the $1,350 mortgage. The reasons which defeat a foreclosure of the second or $1,350 mortgage, however, do not apply to the prior or Jark mortgage, and, although this latter mortgage has been paid and in form discharged, nevertheless we are of the opinion that the plaintiff is entitled to be subrogated to all rights of the original holder of this security. We must bear in mind that the plaintiff has a life estate, and only a life estate, in the farm covered by this mortgage. The mortgage was past due and enforceable, and the only means she had of protecting and preserving her life estate was by its payment. This she did by series of payments of both principal and interest stretching over a long series of years, and it was not before January, 1896, that she was able to make a final payment, and that only by borrowing money to make it. As a life tenant it was her duty to keep down the interest charges, but as to the principal of this mortgage the plaintiff was under no legal obligation to pay it. The payment of the mortgage operated primarily for the use and advantage of the remaindermen, as well as for the protection of the plaintiff's life estate. Under such circumstances the right of subrogation is well established.

Pomeroy in his work on Equity Jurisprudence states the rule in section 799, in which he says:

"The rule is well settled that, when a life tenant, or other person having a partial interest only in the inheritance or in the land pays off a charge, mortgage, or incumbrance on the entire premises, he is presumed to do so for his own benefit. The lien is not discharged unless he intentionally release it. He can always keep the incumbrance alive for his own protection and reimbursement. His intention to do so will be presumed, even though he has taken no assignment. In fact, his payment constitutes him an equitable assignee."

And in section 1211 the same author says that:

"This equitable result follows, although no actual assignment, written, or verbal accompanied the payment, and the securities themselves were not delivered over to the person making payment, and even though a receipt was given speaking of the mortgage debt as being fully paid, and sometimes though the mortgage itself was actually discharged and satisfied of record."

This equitable doctrine, which is "a particular application of the broad principle of subrogation, is enforced whenever the person making the payment stands in such relations to the premises, or to the other parties, that his interests, recognized either by law or by equity, can only be fully protected and maintained by regarding the transaction as an assignment to him, and the lien of the mortgage as being kept alive,

either wholly or in part, for his security and benefit." Numerous authorities and decided cases might be cited in support of this well-recognized doctrine. It is sufficient to say that the rule exactly fits the case of the plaintiff here; and its application and enforcement works the defendants no wrong.

But it is contended that the statute of limitations has run against this cause of action. We think not. The plaintiff by the transactions is simply put in the place of the original holder of the Jark mortgage, and as to this mortgage has all the rights and remedies that Jark had or that he would now have if he were the plaintiff in this action. We do not think the subrogation was complete until the Jark mortgage had been fully paid. Bennett v. Cook, 45 N. Y. 268. Until that final payment, the equitable assignment did not become complete, and, the bond and mortgage being sealed instruments, the plaintiff had 20 years from that date in which to bring an action to foreclose them. As to the defendants in this action, the payments made from time to time by the plaintiff are not to be regarded as pro tanto satisfactions and releases of the original indebtedness, but the plaintiff as to the defendants still had a right to keep alive the mortgage for the protection of her rights and interest.

It was argued, however, that such payments as were made by the plaintiff by way of interest could not operate to prevent the statute of limitations running against the defendants any more than payments made by a stranger to the transaction. In other words, it is argued that, inasmuch as the Jark mortgage by its terms fell due and became payable in 1885, the statute began to run, and subsequent payments either of principal or interest by the plaintiff could not stay the running of the statute; and therefore, more than 20 years having expired since the maturing of the mortgage and the commencement of the action, the action is barred. This argument, however, in our judgment is based on an erroneous conception of the relation of the plaintiff to the property and to the remaindermen. The life tenant in making payments of interest represents the whole estate and all interested in it. In the case of Hollingshead v. Webster, 37 Ch. D. 651, cited in 16 English Ruling Cases at pages 173–174, the question here involved was under discussion, and the court said:

"The right principle to adopt is that, so far as the real estate is concerned, there is no one else but the tenant for life to pay the interest; that in making such payment he represents the whole estate; that the payment is an admission of the liability to the debt affecting the real estate of which he is in possession. It is sufficient evidence of a continuance of the testator's contract to pay the debt, or (if it be necessary to have recourse to the somewhat subtle doctrine of a promise to pay) it is a promise to pay out of such real estate which he, as the person in possession of such real asset, is competent to give in behalf of the real assets generally, and so as to bind those who take in remainder."

Consequently every payment of interest made by the plaintiff to Jark operated as a new admission of indebtedness sufficient to postpone the running of the statute of limitations, and, inasmuch as these last payments were in January, 1896, the mortgage in question cannot be held to be outlawed. We therefore conclude that the plaintiff is entitled to a judgment subrogating her to the rights of the original holder of

the Jark mortgage, and to a decree providing for a sale of the mortgaged premises. The amount to which she is entitled to relief is plain. As the life tenant it was the plaintiff's duty to pay and keep down the interest charge, and as such life tenant she was entitled to all income derived from the property over and above these charges. Consequently she is entitled to a judgment establishing as due and owing and secured to be paid simply the principal sum advanced by her, to wit, the sum of $2,150.

The judgment should also provide for the payment of a reasonable sum as the compensation of the guardian ad litem for the infant defendants in this case.

Let judgment be entered accordingly.