MARY COLLINS and HELEN BRADY, Plaintiffs, *v.* JOHN
E. MCKENNA and ROSE MCKENNA, his wife, Defend-
ants.

(Supreme Court, Kings Special Term, July, 1921.)

Fraudulent conveyances — deed of daughters to father — lack of
valuable consideration — failure to advise daughters as to
their rights as heirs of their mother — tenancy by the curtesy
— adjustment of carrying charges between life tenant and re-
maindermen.

A mother, the owner of real estate, died intestate leaving her
surviving two infant daughters who continued to live upon the
premises with their father until the death of his second wife.
At the death of their mother a mortgage, given about eight
months before, covered said premises and an adjoining parcel,
the title to which then stood and now stands in the name of the
father, but has been paid by him since the death of his first
wife. Shortly after the younger daughter became of age, the
father obtained from both daughters a conveyance of their in-
terest in the property in question and eight years later he mar-
ried his third wife, by whom he has two children, and at the
present time he is about seventy years of age and lives with her
and their two children upon said property. By the answer of
the father in an action to have the deed to him set aside as
having been fraudulently obtained, it was admitted that at the
death of his first wife the property descended to the plaintiffs
as her heirs at law, subject to their father's tenancy by the
curtesy. Upon the trial the original deed, presumably in de-
fendant's possession, though he was not present when it was
executed, was not produced for the court's inspection nor was
there any proof that there was a delivery thereof to him, unless
the real estate agent who drew the deed was acting for him to
receive it. It was clearly established that the conveyance was
without substantial valuable consideration, and that at the exe-
cution thereof plaintiffs were not aware of or advised as to
their rights in the property as heirs at law of their mother.
*Held,* that the failure of defendant in his duty to fully acquaint
plaintiffs as to their rights as remaindermen and as to his own
as life tenant, was a fraud.

While it was the duty of defendant as life tenant to pay taxes and keep down the interest on the mortgage during his life, he was not bound to pay off the principal of the mortgage in so far as it affected the premises in question.

The decree to be entered in favor of plaintiffs on the main issue will provide that upon the delivery of the deed for cancellation, as directed, plaintiffs repay to defendant so much of the mortgage debt as was a lien upon said premises.

ACTION to set aside deed.

Edgar H. Hazelwood (Frederick N. Van Zandt, of counsel), for plaintiffs.

Thomas A. O'Connor (Philip A. Brennan, of counsel), for defendants.

BENEDICT, J. This is one of the numerous cases of property disputes which find their way into the courts after, and usually on account of, the remarriage of and birth of issue to persons whose children by a prior marriage are living.

The defendant John McKenna had as his first wife Abbie, who died intestate in Brooklyn on July 6, 1897, exactly twenty-four years ago. Eleven years before her death the premises in question had been conveyed to her by deed from one McDermott. It is claimed by her husband that he paid the consideration for the deed, but if that be true it is immaterial in this case since he admits by his answer that at his wife's death the property descended to their two daughters as her heirs at law, subject to his tenancy by the curtesy. When their mother died the plaintiff Mary Collins was thirteen years old and Helen Brady was eleven years old. They lived with their father in a small house which stood on the premises in question. John McKenna married again after the death of his wife and with his second wife and his daughters continued to live on the

premises until the death of his second wife which occurred some time later, the exact date not being shown. During the year 1915, he married the defendant Rose A. McKenna and has two children as the result of this union. He is now of the age of seventy years, or thereabouts, and lives with his third wife and their two small children upon the premises and in the house in question.

At the time of the death of Abbie McKenna there was a mortgage for $1,000 which covered the premises in question and an adjoining parcel the title to which, as I understand it, then stood and now stands in the name of the defendant John McKenna. The mortgage was made by Abbie and John McKenna and was dated in November, 1896, about eight months before the death of Abbie McKenna. It has been paid off by John McKenna at some time since the death of his first wife.

It is alleged in the complaint that in November, 1907, shortly after the younger daughter Helen became of age, John McKenna fraudulently obtained a deed from his two daughters to himself conveying their remainder in fee to him, the holder of the life estate, in the property in question. As might be expected, their father repudiates this charge and declares that the conveyance which he received was a voluntary conveyance from his daughters to himself. The evidence which surrounds the execution of the paper is conflicting; but, on the whole, it strongly tends to sustain the plaintiffs' contention. Their own testimony was direct and positive while that of their father was, at many points, evasive or contradictory. He was not present when the deed was signed by his daughters, nor is there any proof that there was a delivery of the deed by them to him unless the real estate agent, Mr. Clark, was acting for him to receive the deed. It is clearly established that the conveyance was without

substantial valuable consideration. The deed was signed at the office of, and presumably was drawn by, the real estate agent of the defendant; and I find that the defendant requested his daughters to go to the real estate office and sign the paper and that they affixed their signatures to it and delivered it to Mr. Clark, their father's agent. I further find that they signed the deed without knowledge of its contents, without opportunity for examining it before signing and in the full trust and confidence in the statement of their father that it was necessary for them to sign their marriage names to a paper which he had had prepared for their signatures but the contents of which he did not explain to them. Of course, the case turns on the question whether the plaintiffs knew the nature of the paper which they signed; and on this point I find the facts in their favor and I also find that they did not learn the character and legal effect of the paper until a short time before bringing this action.

It is quite apparent from the defendant John McKenna's testimony that he considered that he had more right to the property than his daughters by reason of the fact that he had originally purchased it for his wife and paid the mortgage debt and taxes and repairs on it. Doubtless, too, when his children had grown up, were married and had left his home, his views as to his own rights in the property may have been strengthened so that he could persuade himself that he was justified in obtaining a deed from his children; and, as he said, thereby be enabled to offer the property as security on bailbonds without further doubt as to his title which on one occasion had been questioned. It is unfortunate for the defendant that Mr Clark, the real estate agent who kept all his papers and attended to his real estate matters. is no longer living. No person who had been connected with Mr.

Clark's office has been called as a witness; **nor** has the original deed from the plaintiffs to their father which is presumably in his possession been produced for the court's inspection. There is, however, some testimony on the part of the defendant given as a party before trial which is worthy of note. " Q. Did you see Mr. Clark or someone about this paper before your daughters signed it? A. No. Q. Well then how do you know it was there? A. I don't say it was there. My deed and tax papers were there, and I wanted it all made out in one. I spoke to Sammis and Clark, and my papers was in bad condition, and that is what put it into my head to get this settled. Q. Before your daughter signed the paper that is in question here, did you tell her where to go to sign it? A. Yes, to go to the real estate office. Q. What real estate office? A. Sammis and Clark." In view of these statements by the defendant it is difficult for me to credit his statement under cross-examination by his own attorney that his daughter Helen spoke to him first relative to the transaction. I incline to the view that his desire to consolidate the title to the premises in question in which he knew that he only had a life estate with that of the adjoining property which he owned in fee was the controlling motive that induced him to get the deed from his daughters when they were legally qualified to give a valid deed. Such a consolidation was manifestly for his advantage as it would enable him to deal with both parcels in the same manner.

When we consider the relationship existing between the parties to this transaction we see at once that there is a principle of law applicable to the case which is different from that which would apply where no relationship existed. Judge Hand, writing for the Court of Appeals in *Cowee* v. *Cornell*, 75 N. Y. 91, 99, states the rule plainly: "It may be stated as universally true

that fraud vitiates all contracts, but as a general thing it is not presumed but must be proved by the party seeking to relieve himself from an obligation on that ground. Whenever, however, the relations between the contracting parties appear to be of such a character as to render it certain that they do not deal on terms of equality but that either on the one side from superior knowledge of the matter derived from a fiduciary relation, or from overmastering influence, or on the other from weakness, dependence, or trust justifiably reposed, unfair advantage in a transaction is rendered probable, there the burden is shifted, the transaction is presumed void, and it is incumbent upon the stronger party to show affirmatively that no deception was practiced, no undue influence was used, and that all was fair, open, voluntary and well understood. This doctrine is well settled. (Hunt, J. *Nesbit* v. *Lockman,* 34 N. Y. 167; Story's Eq. Jur. sec. 311; *Sears* v. *Shafer,* 2 Seld. 268; *Huguenin* v. *Basely*, 13 Ves. 105; S. C. 14 id, 273; S. C. 15 id. 180; *Wright* v. *Proud,* 13 id. 138; *Harris* v. *Tremenheere,* 15 id. 40; *Edwards* v. *Myrick,* 2 Hare, 60; *Hunter* v. *Atkins,* 3 My. & K. 113.) And this is I think the extent to which the well considered cases go, and is the scope of ' constructive fraud.' * * *

" The law presumes in the case of guardian and ward, trustee and *cestui que trust,* attorney and client; and perhaps physician and patient, from the relation of the parties itself that their situation is unequal and of the character I have defined; and that relation appearing itself throws the burden upon the trustee, guardian or attorney of showing the fairness of his dealings.

" But while the doctrine is without doubt to be extended to many other relations of trust, confidence or inequality, the trust and confidence, or the superior-

ity on one side and weakness on the other must be proved in each of these cases; the law does not presume them from the fact for instance that one party is a grandfather and old and the other a grandson and young, or that one is an employer and the other an *employe.*"

In *Carpenter* v. *Soule,* 88 N. Y. 251, 256, Judge Finch stated the rule thus: "We have held that the mere relation of father and son does not *per se* create a presumption of fraud or undue influence in a mutual dealing, but may do so when connected with other facts showing inequality or controlling influence" (citing *Cowee* v. *Cornell, supra*); and Judge Andrews in *Matter of Smith,* 95 N. Y. 516, 522, speaking of persons occupying a confidential relation to each other, says: "This rule does not proceed upon a presumption of the invalidity of the particular transaction, without proof. The proof is made in the first instance when the relation *and the personal intervention of the party claiming the benefit,* is shown [italics mine]. The law is not so impracticable as to refuse to take notice of the influence of greed and selfishness upon human conduct, and in the case supposed, it wisely interposes by adjusting the quality and measure of proof to the circumstances, to protect the weaker party and, as far as may be, to make it certain that trust and confidence have not been perverted or abused."

I further find as a fact upon the evidence that the plaintiffs were not aware or advised as to their rights in the premises in question as the heirs at law of their mother, at the time when they signed the deed to their father. Before obtaining such deed it was the plain duty of their father to acquaint them fully with their rights as remaindermen and with his own as life tenant. In this duty I find him derelict; hence the rule applies that "Where there is such a relation of

trust and confidence between the parties that the one is under some legal or equitable obligation to give full information to the other party — information which the other party has a right, not merely *in foro conscientiae,* but *juris et de jure,* to have, then the withholding of such information purposely may be a fraud.'' *Dambmann* v. *Schulting,* 75 N. Y. 55, 62.

It was the duty of the defendant John McKenna as life tenant to pay the taxes and to keep down the interest on the mortgage for $1,000 during his life. It was not, however, his duty to pay off for the benefit of the plaintiffs the principal of the mortgage in so far as it affected the premises in question. As to such part of the mortgage as covered those premises the maxim of equity applies that those who seek equity must do equity. Hence, although I shall decide for the plaintiffs upon the main issue, I shall direct that the decree provide that upon the delivery of the deed for cancellation as prayed for, the plaintiffs simultaneously repay to the defendant John McKenna so much of the mortgage debt as was a lien on the premises in question. If the sum cannot be agreed upon I will fix it on the settlement of the findings.

Judgment for the plaintiffs in accordance with this memorandum against both defendants but without costs of the action.

Judgment accordingly.