In the Matter of the Judicial Settlement of the Account of PETER WEBER, as Executor of the Estate of KATHERINE WEBER, Deceased.

Surrogate's Court, Bronx County, May, 1922.

Executors and administrators — accounting — conveyance of real property by testatrix shortly before her death to her brother, named as the executor in her will — deficiency of personal estate to pay legacies — legacies intended to be charged on real estate — when executor must account for proceeds of lands sold by him individually — brother and sister — burden of proof as to good faith in execution of deed — fiduciary relation.

Decedent less than a month before her death executed and delivered a deed of all her real property to the one named as her executor, to serve without bonds, and he conveyed to an innocent third party for value said real estate, but so far as the evidence disclosed there was when decedent made her will, about six months before she died, a great deficiency in the amount of her personal estate in view of the legacies.   *Held*, that this and the fact that the will contained a power of sale and that her realty and personalty were mingled in the residuary clause, warranted the conclusion that it was her intention that the legacies were to be charged upon the realty.

While the fact that decedent and her executor were sister and brother was insufficient of itself to cast upon him the burden of establishing the good faith of the transaction, it was nevertheless a fact to be taken into consideration in determining whether a fiduciary relation existed between them.

Upon consideration of the circumstances surrounding the transaction and the parties, to ascertain whether they were such as to put upon the respondent the burden of proof as to the good faith and propriety of the alleged conveyance, *held*, that they did, and he not having sustained that burden of proof was accountable for the proceeds received by him upon the sale of the said real property over and above the mortgages which were thereon at the time of the conveyance of the premises to him with interest at the legal rate from the date of his conveyance of said premises to an innocent third party for value.

The account of the executor will be surcharged accordingly and costs to be taxed allowed to the petitioner together with an allowance to the special guardian, payable out of the estate.

PROCEEDING to compel an accounting.

*Charles H. Herbst (David F. Barnett,* of counsel), for petitioner.

*Clocke & Koch (Edward R. Koch,* of counsel), for respondent.

*Henry G. Schackno,* special guardian.

SCHULZ, S.   The respondent, as executor of the last will and testament of the decedent, took possession of all of her personal property, removed it from her residence but did not account.   There-

upon, the petitioner, as the guardian of her three minor children, legatees under her last will and testament, brought this proceeding to compel such accounting. After the service of the citation and pending the determination of the application, the said executor filed an account showing no surplus for distribution. Thereupon, the petitioner filed objections. Subsequently, and pending the hearing of such objections, he consented to be charged with the sale price of certain personal property belonging to the decedent. At the conclusion of the hearings it appeared from the admissions of the respondent that there would be a surplus distributable to persons interested, and supplemental citations were thereupon issued directed to the persons who must be cited on a petition for a judicial settlement. Surrogate's Court Act, § 260. None of these persons appeared, but the special guardian appointed for some of the interested infant parties filed objections and stipulated to submit these upon the evidence adduced in support of the objections filed by the petitioner. As the items objected to by the special guardian are all embraced in the petitioner's objections a determination of the latter will also dispose of the special guardian's objections. In the following, therefore, I am referring to the objections filed by the petitioner.

The first objection requires no action as the facts stated are not controverted and present no question for determination. The second objection embraces the property also set forth in objections nine and ten and is disposed of by their determination. The third objection is dismissed, the fourth and seventh objections were withdrawn upon the hearing, and the fifth, sixth and eighth objections are sustained, and the respondent, the accounting executor, is surcharged with the sum of $236, being the aggregate amount of the items referred to in such objections.

Objection ten alleges the respondent's failure to account for some furniture which it was claimed the decedent owned at the time of her death. As to the latter, and some jewelry, an itemized list was submitted, and it was stipulated that the property therein set forth be sold and the respondent be surcharged with the proceeds thereof. Subsequently, and by a stipulation to that effect duly filed, it was agreed that the net amount of $608.25 was realized on such sale and that respondent be surcharged therewith. The tenth objection is, therefore, sustained and the surcharge made accordingly.

The remaining and main question to be determined is that raised by the ninth objection. It refers to the proceeds of the sale of certain real property of which the decedent had given a deed to the respondent, and which the latter subsequently sold; it being

contended that the evidence establishes that the respondent is chargeable therewith in this proceeding.

It is urged by the respondent that the petitioner and the special guardian have no standing to interpose this objection because their wards are entitled to money legacies which are payable out of the personalty and are not charges upon the decedent's real estate. With that contention I am not in accord. Unless the intent of the testatrix was that the legacies which she provided for in her will with definiteness and certainty were to be charged upon her real estate, we must assume that she did not intend that they should be paid. The amount of her personal estate when the will was made, so far as the evidence discloses, reveals a great deficiency in view of the legacies and this and the fact that the will contains a power of sale and mingles the decedent's realty and personalty in the residuary clause, warrant the conclusion that it was her intention that these legacies were to be charged upon the realty. *Carley* v. *Harper,* 219 N. Y. 295; *Ely* v. *Megie,* Id. 112; *Briggs* v. *Carroll,* 117 id. 288; *Kalbfleisch* v. *Kalbfleisch,* 67 id. 354.

Upon the record in this matter, a solution of the question whether or not the respondent is chargeable with the proceeds of the sale of the real estate; depends upon who has the burden of proof.

It is not disputed that the decedent made and delivered a deed of the real property in question to the respondent. In general, proof of the execution of a deed and its delivery raise the presumption of its validity, and the burden of proving its invalidity or of impressing a trust thereon, or upon the proceeds of its sale, is upon the person attacking the same. *Jones* v. *Jones,* 137 N. Y. 610; *Piuntkosky* v. *Harrington's Sons Co.,* 167 App. Div. 117. This general proposition is subject, however, to some exceptions where, under the authorities, the grantee cannot rest secure by simply showing the execution and delivery of the deed to him.

The latter cases may be divided into two classes: The one, where, from the relations between the parties, the law will presume that one exercises a controlling influence over the other, and the other, where the proof of the fact that a fiduciary relation exists must first be established before the one deriving an advantage is required to show the good faith of the transaction.

In *Doheny* v. *Lacy,* 168 N. Y. 213, 222, the Court of Appeals, in speaking of the rule which under certain conditions makes it incumbent upon the beneficiary of a transaction to prove that no undue advantage was taken of the other party thereto, sums the matter up as follows: " That rule, within the cases, requires as a basis for its application that a fiduciary relation exist between the

parties, which will give to the one, in legal presumption, a controlling influence over the other. Such would be the relation of parent and child, guardian and ward, trustee and *cestui que* trust, physician and patient and attorney and client. In these confidential relations, the situation of the parties is regarded as unequal and as conferring upon one a certain control, or domination, over the will, conduct, and interests of the other. Transactions between them are, therefore, scrutinized closely and presumptions arise of their impropriety, which must be met where an advantage is derived by the presumably dominant party. (*Sears* v. *Shafer*, 6 N. Y. 268; *Nesbit* v. *Lockman*, 34 id. 167; *Cowee* v. *Cornell*, 75 id. 91; *Matter of Smith*, 95 id. 516, 522.) The presumption is one born of a relation of parties, which would create a situation of more or less dependence by one upon the other. (*Smith* v. *Kay*, 7 H. L. Cas. 771.) While in the relations instanced this rule is generally applied, it is, also, extended to other relations of trust, confidence, or inequality; but its application will then demand some previous proof of the trust and confidence, or of the superiority on one side and of the weakness on the other. The law will not presume it from the ordinary relations between persons, in the business world, or in the family connection. The question as to parties so situated is a question of fact dependent upon the circumstances in each case. (*Cowee* v. *Cornell*, *supra*, pp. 91–101.) Most of the business relations between persons, in a sense and to a degree, rest upon confidence reposed by the one in the other. Without it, the commercial dealings of the community would be seriously restricted. But the common-law presumption of impropriety, or of unfairness, was not intended to reach such cases; or any cases except those where the circumstances have created what the law regards as a fiduciary relation and where, as a safer general assumption, it regards one as the stronger party and, therefore, as bound, in every transaction with the other, to establish, affirmatively, its good faith and propriety." See, also, *Boyd* v. *De La Montagnie*, 73 N. Y. 498; *Snook* v. *Sullivan*, 53 App. Div. 602; *Ten Eyck* v. *Whitbeck*, 156 N. Y. 341, 353; *Hall* v. *O'Brien*, 218 id. 50; *Collins* v. *McKenna*, 116 Misc. Rep. 72.

In the pending matter, there is no relationship of parent and child, guardian and ward, trustee and *cestui que trust*, physician and patient, or attorney and client; and as the law will not presume the existence of a condition of trust, confidence or inequality or of superiority on the one hand and weakness upon the other from the ordinary relations between persons " in the family connection," it would follow that the fact that the decedent and the respondent **were** sister and brother, of itself, would not be sufficient to cast

the burden of establishing the good faith of the transaction upon the respondent. This conclusion is warranted by the authorities.

In *Sears* v. *Shafer*, 6 N. Y. 268, it is true that the relationship between the parties was that of brother and sister and the release there involved was set aside, but it is evident from the opinion that it was not due to any presumption arising by reason of the relationship alone, but upon proof of other facts which showed a condition of dependence, weakness, etc., to have existed on the part of the sister.

In *Dolan* v. *Cummings*, 116 App. Div. 787, the relationship was also that of brother and sister, but they were also tenants in common and I do not read the case as holding that the mere relationship of brother and sister placed the burden of showing the good faith of the transaction upon the grantee. Such a family relationship was one of the elements considered, but it was not the controlling consideration.

So in *Gugel* v. *Hiscox*, 138 App. Div. 61, the court held that an agreement there set forth was unconscionable, unjust and without adequate consideration and that it was obtained by the defendants through deception and by taking advantage of their superior knowledge and their sister's ignorance of the business and its value.. Again it does not appear that the relationship of itself was sufficient to shift the burden.

In *Kelly* v. *Kelly*, 116 Misc. Rep. 195, the plaintiff and the defendant were sister and brother, respectively, and the action was to set aside a deed made by the former to the latter, but there also it does not appear that the relationship alone was the determining factor.

In *Cowee* v. *Cornell*, 75 N. Y. 91, the relationship was that of grandfather and grandson, employer and employee, and it was held that such relationship of itself did not raise a presumption of fraud, but that the trust and confidence or superiority on the one side and weakness on the other, must be proved.

It, therefore, becomes necessary to examine into the circumstances surrounding the transaction and the parties with a view to ascertaining whether they were such as to put the burden of proving the good faith and propriety of the alleged conveyance upon the respondent.

While the relationship of brother and sister, of itself, does not appear to be sufficient to put the burden of showing good faith upon the respondent, it is, however, one of the facts which may be taken into consideration in determining whether a fiduciary relation exists. This, I think, clearly appears from the opinions in the cases cited and discussed above.

42

The decedent on May 2, 1917, executed a last will and testament by which she gave and bequeathed the sum of $1,000 to each of three clergymen, the sum of $500 to each of the three wards of the petitioner, and the sum of $500 to each of the two children of the respondent, and gave, devised and bequeathed all the rest, residue and remainder of her estate to the two children of the respondent. She appointed the respondent executor of her will to serve without bonds and gave him power to sell her real estate.

Thereafter, and on October 24, 1917, she made, executed and delivered a deed of the real property in question which was all the real estate which she possessed, to the respondent, and this deed was duly recorded in the register's office of Bronx county where the real property was situated on November 2, 1917. She died on November 12, 1917. On October 10, 1919, the respondent sold the property in question to an innocent third party for value.

I shall not attempt to analyze in detail the testimony given by the various witnesses. It is not disputed that when the decedent executed the deed she was confined to her bed suffering from cancer of the liver, was a very sick woman, and from October 2, 1917, about twenty-two days before the date of the deed, and practically up to the time of her death, which occurred nineteen days thereafter, she was taking on an average of one grain of morphine a day to allay the pain which she was then suffering. The physician called as a witness for the respondent describes her as a woman of about fifty years of age, very thin and very pale, very anemic, complaining most of the time and usually in very great pain. During the time of her last illness and up to the 29th day of October, 1917, five days after the deed was executed, it appears that the respondent was the only one of her brothers who called upon her and was with her frequently. One of the witnesses testified that she asked the respondent to send for his brother and that he said he did not know where he lived. The brother testified that the respondent did know where he lived and had visited him theretofore. One of the tenants of the decedent testified that the respondent collected rent from her for the decedent at a certain time, although she does not appear to be positive about it, and that she saw him around the premises often, and the nurse says that he paid her for the last two or three weeks during which she was there. Before that time, it appears that her tenants had made payments directly to her and also that she had paid the doctor and the nurse, the former down to his last visit.

Not quite six months before the date of the deed, she had made a will, and if the deed was intended to be an absolute conveyance, then all of the legacies and devises contained in the will were

practically revoked. There is no explanation or attempted explanation as to why the decedent should take such action, nor is there anything to show why she did not revoke her will if she intended that the legacies therein provided for should not be paid. The attorney who drew the deed and who is the same one who drew her will, had no discussion with her about the matter and appears to know practically nothing about it except that he acted as a notary. He did not discuss her affairs with her at that time, did not advise or consult with her as her attorney, nothing was said as to why the conveyance was made and no consideration passed. The parcel of real estate in question was the only real property which she owned, and if it was a gift *inter vivos*, she thereby deprived herself of almost all of her property, her personalty exclusive of furniture and jewelry being not in excess of $800.

If then we consider the relationship between the parties, the illness and bed-ridden condition of the decedent, her constant and intense suffering requiring the administration of opiates, the fact that the respondent was the only close relative who was with her during her last illness up to and at the time when this deed was executed, and that apparently no consideration was paid for this property, the circumstances are such as under the rule referred to in *Doheny* v. *Lacey, supra,* may well be held to have created what the law regards as a fiduciary relation and a situation where it is a safer presumption to regard this respondent as the stronger and dominant party of the two and, therefore, as bound in this transaction to establish its good faith and propriety. As was said in *Cowee* v. *Cornell,* 75 N. Y. 91, 99: " Whenever, however, the relations between the contracting parties appear to be of such a character as to render it certain that they do not deal on terms of equality but that either on the one side from superior knowledge of the matter derived from a fiduciary relation, or from overmastering influence, or on the other from weakness, dependence, or trust justifiably reposed, unfair advantage in a transaction is rendered probable, there the burden is shifted, the transaction is presumed void, and it is incumbent upon the stronger party to show affirmatively that no deception was practiced, no undue influence was used, and that all was fair, open, voluntary and well understood. This doctrine is well settled." Citing many cases. I hold, therefore, that the burden of proof was upon the respondent in that regard, and that burden he has not sustained.

Both parties agree that this court has jurisdiction to give the relief prayed for, namely, that the respondent be surcharged with the amount received by him upon the sale of said premises. I, therefore, conclude that the respondent is accountable for the

proceeds received by him upon the sale of the said real property over and above the mortgages which were thereon at the time when the premises were conveyed to him.

The deed made by the decedent to the respondent recites mortgages aggregating $26,500. The sale price was $34,000, so that the amount received by the decedent over and above the mortgages aforesaid was $7,500. There were in fact paid to him, it seems, $8,000, but of that sum $500 appear to represent installments paid on the first mortgage after the time when he took title.

The ninth objection is, therefore, sustained and the respondent surcharged with the sum of $7,500, with interest at the rate of six per cent per annum from the 10th day of October, 1919. Costs to be taxed are allowed to the petitioner and an allowance is awarded to the special guardian, payable out of the estate.

Tax costs. Settle decision and decree accordingly.

Decreed accordingly.