In the Matter of the Accounting of SIDNEY MEYERS, as Executor of CHARLES A. COLLIGAN, Deceased.

Surrogate's Court, Queens County, January 9, 1952.

*Sidney Meyers,* executor in person.

*Isaac Elstein* for Gertrude C. Hans.

*Frederick S. Rauber* for Mary J. Colligan.

SAVARESE, S. By the third paragraph of his will the testator devised certain residential real property to one Gertrude C. Hans for life. Upon her death the executor is directed to sell the same and distribute the proceeds in equal shares to four named persons. Said remaindermen are also entitled to bequests under the fourth paragraph of the will and are the residuary legatees. On August 6, 1941, the testator executed a bond to repay the sum of $6,000, with interest at 4½% per annum, in quarter annual installments of $112.50 each. The bond was secured by a mortgage on the devised realty. At his death on September 16, 1947, the principal balance of the mortgage debt had been reduced to $4,724.78. The life tenant has made the payments falling due since the testator's death. As each installment constitutes a partial payment of principal, the mortgage debt has thus been reduced by the further sum of $825.85 by the life tenant so that as of the closing date of the present account the principal balance was $3,898.93. The life tenant seeks to be reimbursed presently for the $825.85 and also seeks the establishment of a reserve of $3,898.93 to secure future payments of principal. The executor agrees that the life tenant is entitled to reimbursement for the advances made by her

on account of mortgage principal and that she has a lien upon the land and the remainder interests to secure her right of reimbursement. But the executor contends that she is limited to her remedy against the land by means of her lien.

Unless the will provides to the contrary, a life tenant is under no duty to pay the principal of a mortgage debt which was made a lien on the land by the testator. (*Stevens* v. *Melcher,* 152 N. Y. 551.) That obligation rests upon the remaindermen. (*Chamberlain* v. *Gleason,* 163 N. Y. 214; *Collins* v. *McKenna,* 116 Misc. 72; *Bonhoff* v. *Wiehorst,* 57 Misc. 456.) A life tenant may, however, voluntarily pay principal when due in order to protect her life estate from foreclosure. By so doing she acquires a right to be reimbursed by the remaindermen, secured by a lien upon their remainder interests. (*Matter of Britz,* 82 N. Y. S. 2d 792.) But the life tenant is not entitled to be reimbursed in full at the time of payment. (See 1 Restatement, Property, § 132, comment f; § 129, comment hh [1948 supp.].) The burden must be apportioned according to their respective interests in the property. (*Baker* v. *Schleyer,* 233 App. Div. 584, 586, affd. 260 N. Y. 673; *Matter of Cronise,* 167 Misc. 310, 314.) Reduction of the mortgage debt benefits her as well as the remaindermen. The latter have no right to enjoy the premises while she lives; the lower mortgage debt will redound to their advantage only when their estates become possessory. On the other hand, the life tenant is presently benefited by a corresponding diminishment of interest charges. It has been held that a life tenant is obligated to contribute a sum equal to the present value of the periodic interest payments she would have had to pay during her lifetime had the incumbrance not been paid off. (*Bell* v. *Mayor of New York,* 10 Paige Ch. 49, 69; *Swaine* v. *Perine,* 5 Johns. Ch. 482, 493; *Cogswell* v. *Cogswell,* 2 Edw. Ch. 231, 238; see *Chamberlain* v. *Gleason, supra,* p. 220; *Madison Ave. Baptist Church* v. *Baptist Church in Oliver St.,* 73 N. Y. 82, 99; Note, 87 A. L. R. 220; 33 Am. Jur., Life Estates, Remainders, and Reversions, § 461, p. 998, and 2 Thompson on Real Property [Perm. ed.], § 808.) Recognizing that payment of principal represents a new investment of capital and creates a new legal relationship, it has been held that the legal interest rate should be employed in calculating this sum due rather than the rate stipulated in the satisfied mortgage. (*Bell* v. *Mayor of New York, supra.*) The foregoing method of computing the life tenant's contribution has the effect of preserving the *status quo* as of the testator's death. Thus the life tenant must pay interest, or the commuted value thereof,

throughout her life expectancy upon the principal of the mort-
gage debt as it stood when the testator died. This may not
accord with the intention of the average testator who probably
thinks, if he gives it any thought at all, that his life tenant
devisee will be liable for interest only until the mortgage is
satisfied in accordance with its terms. As the present values
of the life estate and remainder in the fee have been increased
proportionately by part payment of the mortgage debt, it would
seem fairer to allocate the burden of the new investment in the
same proportion. (3 Simes on Future Interests [1936 ed.],
§ .634, p. 33; 1 Restatement, Property, § 132, comment e, and
Special Note thereto.) The Legislature is apparently of the
same mind, for article 80-A of the Civil Practice Act (added by L.
1947, ch. 848) now requires that life tenant and remainderman
share the burden of a new expenditure of capital required for
the payment of a mortgage in proportion to their respective
interests in the fee. (Civ. Prac. Act, § 1330; see 1947 Report
of N. Y. Law Revision Commission, pp. 301, 322, 349, and
*Matter of Stankewich*, N. Y. L. J., May 26, 1950, p. 1889, col. 2.)

Ordinarily one who unofficiously pays the mortgage debt of
another is subrogated to the rights of the mortgagee. (*Pease*
v. *Egan*, 131 N. Y. 262; *Gerseta Corp.* v. *Equitable Trust Co.*,
241 N. Y. 418, 425.) This would confer the right to hold the
debtor's estate on the bond (*Seaman's Bank for Sav.* v. *Smad-
beck*, 293 N. Y. 91; *Mutual Life Ins. Co.* v. *Weil*, 197 Misc. 703)
and to foreclose. (*Pease* v. *Egan, supra.*) However, to permit
recovery in full against the estate or the remaindermen would
delay or avoid the contribution for which the life tenant is
equitably liable and would defeat the purpose of section 250 of
the Real Property Law. That statute provides that devisees
of mortgaged realty must satisfy the mortgage out of their
own property without resorting to the executor of their testator.
Life tenant and remaindermen alike are devisees. Of course,
they are liable only to the extent of their interests in the land
(*Hauselt* v. *Patterson*, 124 N. Y. 349), and cannot be held per-
sonally liable on the bond. (*Levy* v. *Comfort*, 13 N. Y. S. 2d 845,
affd. 257 App. Div. 1037.) This limitation upon the liability
of devisees of incumbered land applies where the rights and
liabilities of the mortgagee vis-à-vis the devisees are involved;
it does not apply in this case involving the rights and liabilities
of the life tenant and remainderman *inter se*. Certainly the
fact that the remaindermen cannot be held personally liable *by
the mortgagee* for the testator's debt should not prevent the
life tenant from securing contribution for paying part of the

mortgage debt to avoid foreclosure. As subrogee of the mortgagee the life tenant could not hold the remaindermen personally liable. But as life tenant she stands in a different and better position. As subrogee she might recover from the executor on the bond, but he has the right to be exonerated by the devisees from paying the mortgage debt. (Real Property Law, § 250.) Granting direct relief to the life tenant against the remaindermen in this accounting proceeding in which all parties are before the court and in which the remaindermen have other presently distributable legacies will avoid circuity of action.

Restricting the life tenant to a lien on the premises would have the practical result of delaying her recovery until the termination of her life estate and the sale of the premises by the executor. She might, of course, presently foreclose her lien by sale of the entire fee, but that would deprive her of the use of the premises. She might foreclose against the remainders only, but probably no one would be interested in buying such future interests. Thus the limited remedy conceded by the executor would effectively deprive the life tenant of a portion of that full enjoyment of the premises which the testator intended her to have. To protect her life estate she must pay mortgage principal when due, as well as the interest; yet the ultimate burden of paying principal rests in large measure upon the remaindermen. In my opinion the life tenant is presently entitled to contribution out of the remaindermen's legacies to the extent of the latter's proportionate share of each principal payment computed in accordance with article 80-A of the Civil Practice Act as of the time each such payment became due. The life tenant is directed to furnish the executor and the court with a certified copy of her birth record or other proof of her birth for the purpose of making the appropriate calculations.

With respect to the requested reserve for future installments of principal, the case must be governed by section 207 of the Surrogate's Court Act. (See *Matter of Green,* 271 App. Div. 171, and *Matter of Burridge,* 146 Misc. 527.) The mortgagee was made a party to this proceeding because of the contingent liability of the estate upon the bond and has appeared, but makes no request for a reserve. As the realty in question is appraised at $18,500 the mortgagee is evidently unconcerned with the need for additional security, and is content to allow distribution of the assets of its debtor without reservation. However, under the facts of this case the life tenant may be regarded as a contingent creditor for the purpose of creating a reserve out of the remaindermen's legacies to secure future

installments of mortgage principal. (*Matter of Lanigan,* 174 Misc. 570, 572.) Three of the four remaindermen reside in Indiana. None of them has shown any inclination to bear the portion of the burden of paying mortgage principal which the law imposes on them.

Prior to the enactment of chapter 86 of the Laws of 1941, it was held that a reservation of assets to the full extent of the obligation was mandatory upon the request of a contingent creditor irrespective of the value of any security available to the latter. (*Matter of Burrows,* 283 N. Y. 540.) Accordingly, in *Matter of Lanigan* (*supra*), a reserve was created sufficient to pay that portion of the monthly mortgage payment which represented the amortization of the principal amount thereof. Since 1941, however, the Surrogate is authorized to diminish the amount of the reserve by the value of any collateral security. (*Matter of Black,* 178 Misc. 71, affd. 266 App. Div. 837, affd. 293 N. Y. 85.) But the amendment does not *require* the value of the security to be offset against the reserve. The statutory language is distinctly permissive. It reads: '' there *shall* be no distribution of the assets of said estate without the reservation of such estate assets as the surrogate *shall* determine to be adequate to pay such contingent or unliquidated claim when the amount thereof shall become due and payable. In fixing the amount to be reserved for the payment of the contingent claim the surrogate *may* determine the value of any security or collateral to which the creditor may resort for the payment of the debt and *may* thereafter direct the reservation if necessary of estate assets sufficient to make up the difference between the value of such security or collateral and the amount necessary to pay the contingent or unliquidated claim.'' (Emphasis supplied.) (See, also, the Legislative Note appended to L. 1941, ch. 86.) While ordinarily it might be an abuse of discretion for the Surrogate to direct the reservation of assets sufficient to pay a contingent obligation where the security is unquestionably adequate, the special situation presented in this case requires it. Otherwise the life tenant will find it difficult or impossible to enjoy the full life estate which the testator gave to her. Creation of the reserve will harm no one but those who have a continuing duty to pay a portion of the mortgage debt. This court has power '' To administer justice in all matters relating to the affairs of decedents, and * * * to try and determine all questions, legal or equitable, arising between any or all of the parties to any proceeding * * * as to any and all matters necessary * * * to make a full, equitable

and complete disposition of the matter by such order or decree as justice requires." (Surrogate's Ct. Act, § 40.) In addition, this court now has power " to direct and control the conduct, and settle the accounts, of * * * legal life tenants " (Surrogate's Ct. Act, § 40, subd. 3, as amd. by L. 1940, ch. 829.) In order to do justice between the life tenant and the remaindermen in this case creation of a reserve is necessary. Anything less than such relief will make her right to contribution from them from time to time exceedingly burdensome to enforce, assuming that she can acquire jurisdiction over all of them and that they will then have sufficient assets to satisfy any judgments. If they are presently being deprived of the enjoyment of a portion of their inheritance it is only because they have shown by their past conduct that they are unwilling to assume the burden that is rightfully theirs. Any balance of the fund and interest thereon remaining after the mortgage is satisfied or after the life tenant's death, whichever occurs sooner, will be paid to the remaindermen equally. For the purpose of computing the amount of the reserve, the executor is directed to furnish the life tenant and the court with a breakdown of the future installments to show how much of each $112.50 payment will represent principal.

The executor is directed to make the necessary calculations in accordance with this opinion, and to furnish the life tenant and the court with the amounts to be paid presently to the life tenant and to be reserved.

By paragraph second of the will the testator bequeathed to Gertrude C. Hans " the following personal property which I may own at the time of my death, viz.:

" (a) My automobile.

" (b) Such household furniture, wearing apparel and other personal property as may be located in or on my residence, 169–17 45th Avenue, Flushing, Long Island, New York, at the time of my death. The term ' personal property ' is not intended to, nor shall same be construed as including money, jewelry, stocks and bonds, securities, evidences of debt, or items akin thereto; the intention being that the said GERTRUDE C. HANS shall receive only those items that contribute to the use or convenience of the householder or ornament the premises."

The executor seeks a determination that two refrigerators and two gas ranges, physically attached to the premises by the insertion of wire cords into electrical outlets and by gas pipe fittings and used in connection with each of the two apart-

ments on the premises, pass to Gertrude C. Hans under the above-quoted provision. The court holds that they are all personal property as defined by the testator and so pass. (See *General Synod of Reformed Church* v. *Bonac Realty Corp.*, 297 N. Y. 119, 123; *Madfes* v. *Beverly Development Corp.*, 251 N. Y. 12; *Cohen* v. *1165 Fulton Ave. Corp.*, 251 N. Y. 24.)

The claim of Prudence D. Tate set forth in schedules D and K of the account is disallowed on her default. The compensation of the executor for legal services rendered by him for the benefit of the estate is fixed and allowed in the sum requested. Account settled. Submit decree on notice.